UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROBERT L. TAYLOR and ROBIN A. TAYLOR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 4:16-cv-04167-SLD-JEH |

ORDER

Before the Court is Plaintiffs' motion to reopen this case and to reconsider its previous order granting Defendant's motion to dismiss, ECF No. 26. Also before the Court is Plaintiffs' motion for leave to file a reply in support of their motion to reconsider, ECF No. 31. For the reasons that follow, the motion to reconsider is GRANTED IN PART and DENIED IN PART and the motion for leave to file a reply is GRANTED.

**PROCEDURAL BACKGROUND**

This Court's previous order recited the facts of this case, which will not be repeated here. *See* Order 1–3, ECF No. 24. Plaintiffs filed a class action complaint including federal and state law claims in relation to a loan they contracted for with Defendant. Am. Compl., ECF No. 9. On August 10, 2017, the Court dismissed Plaintiffs' federal law claims, including their claim pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and declined to exercise supplemental jurisdiction over the remaining state law claims. *See* Order 4–15. The Court ruled that Plaintiffs' FDCPA claim was untimely because Defendant's

1

communications that could form the basis for an FDCPA claim occurred more than a year before the suit was filed. *Id.* at 11–15. The case was closed and judgment was entered. *See* Judgment, ECF No. 25.

Plaintiffs now seek relief from the judgment on two grounds. Mot. Reconsider, ECF No. 26. First, Plaintiffs argue that the Court erred in dismissing their state law claims because they pleaded jurisdiction under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 (2005) (codified in scattered sections of Title 28 of the United States Code), which provides an independent basis for federal jurisdiction. Mem. Supp. Mot. Reconsider 3–4, ECF No. 26-1. Second, Plaintiffs argue that the Court erred in dismissing their FDCPA claim as untimely and did not consider their argument that the Defendant's communications to Plaintiffs and credit reporting agencies about the substance of the loan modification agreement independently violated the FDCPA. *Id.* at 4–7.

## DISCUSSION

### a. Legal Standard

Federal Rule of Civil Procedure 59(e) authorizes a party to file a motion to alter or amend a judgment within twenty-eight days of entry. Relief may be granted only if the movant presents newly discovered evidence or establishes a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A manifest error occurs when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quotation marks omitted). A motion to reconsider is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906

F.2d 1185, 1191 (7th Cir. 1990) (quotation marks omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

b. Analysis

i. Class Action Fairness Act

"CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ('minimal diversity'); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017); *see also* 28 U.S.C. § 1332(d). The party asserting CAFA jurisdiction must establish that these requirements are satisfied. *Sabrina Roppo*, 869 F.3d at 578. Defendant argues Plaintiffs cannot establish the first and third requirements. Def.'s Resp. 4–5.

Plaintiffs argue that they have satisfied CAFA's class-size requirement, pointing to the results of a PACER search, which indicate that Defendant has been involved in 57,660 Chapter 13 bankruptcy proceedings between January 1, 2012 and September 14, 2017, and Defendant's website, which states that it has modified approximately 700,000 loans.[1] Pl.'s Proposed Reply 3–4. Plaintiffs also claim that Defendant's alleged misconduct is "systematic[]" and has been the subject of disapproval in at least one federal bankruptcy court. Am. Compl. 3.[2] But the putative

---

[1] The Court takes judicial notice of additional information on Defendant's website. *See* Fed. R. Evid. 201. Defendant's website claims that between January 1, 2008, and September 30, 2017, it modified approximately 755,000 loans, of which 37,600 were modified in Illinois. *State-by-State Ocwen Modification*, Ocwen, http://www.ocwencares.com/wp-content/uploads/2017/10/State-by-State-Ocwen-Modification-Activity-20171026.pdf.

[2] Plaintiffs cite *In re McKain*, No. 08-10411, 2009 WL 2848988, at *2 (Bankr. E.D. La. May 1, 2009), in which the court noted its involvement in six cases over four years where Defendant "either included improper fees in its claim;

3

classes are defined more narrowly. Plaintiffs bring two claims[3] on behalf of the "Illinois Class," which is defined as:

> All Illinois residents who within the applicable limitations period had a loan serviced by Ocwen and (1) made payments on their mortgage loan pursuant to a Chapter 13 plan (2) were issued a Notice of Final Cure or similar document to which Ocwen did not object (3) for whom Ocwen did not acknowledge the mortgage as current after the Notice of Final Cure payment was issued and (4) to whom, after the Notice of Final Cure payment or similar court ruling was issued, Ocwen, in disregard of the notice of cure or similar court ruling, sent mortgage statements through the mail or electronically or about whom Ocwen furnished information to credit reporting agencies reflecting that the loan was not current.

Am. Compl. at 15, 25–27. And Plaintiffs' fourth cause of action, which alleges fraudulent inducement, is brought on behalf of a nationwide "Fraudulent Inducement Class":

> All United States residents who within the applicable limitations period had a loan serviced by Ocwen and (1) made payments on their mortgage loan pursuant to a Chapter 13 plan; (2) were issued a Notice of Final Cure Payment or similar document to which Ocwen did not object; (3) for whom Ocwen did not acknowledge the mortgage as current after the Notice of Final Cure payment was issued; and (4) to whom, after the Notice of Final Cure payment or similar court ruling was issued, Ocwen, in disregard of the notice of cure or similar court ruling, sent mortgage statements through the mail or electronically reflecting that the loan was not current and (5) who subsequently entered into a loan modification agreement with Ocwen, the balance for which exceeded the amount owed at the end of the Chapter 13 process.

*Id.* at 15, 26. The PACER data and that from Defendant's website does not account for the applicable time period, how many putative class members made payments on their mortgage loans pursuant to a Chapter 13 plan, how many putative class members were issued a Notice of Final Cure that was served on Defendant, were contacted by

---

attempted to collect, post-discharge, fees and costs that were undisclosed but assessed during a bankruptcy; or attempted to foreclose on disallowed or discharged debt." *See also id.* at *2 n.4 ("It is likely that there are many additional cases where this activity has occurred, but not all debtors' counsel carefully monitor creditors' proofs of claim.")

[3] Plaintiffs' third cause of action alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1–505/12, and Plaintiffs' fifth cause of action alleges unjust enrichment. Am. Compl. 25–27.

Defendant, and, with respect to the Fraudulent Inducement Class, entered into a loan modification agreement, the balance of which exceeded the amount owed at the end of the Chapter 13 process. Although jurisdictional requirements are "pleading requirement[s], not a demand for proof," the proponent of federal jurisdiction must provide enough information to enable the Court to determine whether there is subject matter jurisdiction. *See Blomberg v. Serv. Corp. Intern.*, 639 F.3d 761, 763 (7th Cir. 2011) (quotation marks omitted).

As for the amount-in-controversy requirement, "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985–86 (7th Cir. 2008) (citation omitted) (holding that CAFA's amount-in-controversy requirement was satisfied where the plaintiff alleged his and the putative class members' credit cards were charged without authorization through twenty-two of the defendant's programs where billings for four of the twenty-two totaled almost $7 million, the plaintiff alleged that the defendant's practices were "standard" and "common" to the class, which put into controversy "the propriety of all of [the defendant's] charges"). Plaintiffs argue that they have established this requirement because they seek "actual damages, punitive damages, restitution, disgorgement, and injunctive relief," and that there is, at minimum, $30,000 at stake in Plaintiffs' case, which is typical of the putative classes' members. Pl.'s Proposed Reply 4. At $30,000 per claim, "it would only take 167 similarly affected class members" to reach the $5 million threshold. *Id.* Without a clearer sense of the size of the putative classes, however, the

Court cannot rely on this math to conclude the amount-in-controversy requirement is satisfied.[4] *Compare Musgrave v. Aluminum Co. of America, Inc.*, No. 3:06-CV-0029-RLY-WGH, 2006 WL 1994840, at *1–2 (S.D. Ind. July 14, 2006) (holding that CAFA's amount-in-controversy requirement was satisfied where the plaintiffs sought damages, including lifetime healthcare and medication, the class had already been shown to include at least 458 members, and the "cancer-ridden" named plaintiff was a typical class member), *with Wang v. Asset Acceptance, LLC*, 680 F. Supp. 2d 1122, 1124 (N.D. Cal. 2010) (noting that the defendant's notice of removal contained mere allegations that did not satisfy the amount-in-controversy requirement, including "[a]ssuming . . . that just 1.4 percent of the accounts . . . are at issue, the matter in controversy would exceed [$5 million]" because multiplying 1.4% of the accounts by an award of punitive damages of $100 each would exceed $5 million). The Court finds that Plaintiffs have not carried their burden as to CAFA's jurisdictional requirements.

In the alternative, Plaintiffs move for jurisdictional discovery. Pl.'s Proposed Reply 1, 5. "[I]t is within the discretion of the district court to allow a plaintiff to conduct limited discovery in order to establish that jurisdiction exists." *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. 2015) (quotation marks omitted). "[A] plaintiff seeking jurisdictional discovery must advance proof to a reasonable probability of the facts necessary to establish federal jurisdiction." *Id.* (quotation marks omitted). Plaintiffs have advanced such proof.[5]

---

[4] *See* 2 McLaughlin on Class Actions § 12:6 (14th ed. 2017) (noting that to determine whether CAFA's amount-in-controversy requirement is met, "reasonable assumptions may be made based on the approximate number of putative class members and the nature of their alleged damages").

[5] Ordering limited jurisdictional discovery in this case serves the "primary objective" of CAFA, that is, to "ensur[e] Federal court consideration of interstate cases of national importance." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quotation marks omitted); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court . . . .'" (quoting S. Rep. No. 109-14, at 43 (2005))); S. Rep. No. 109-14, at 44 (noting that "a federal court may have to engage in some fact-finding" to address issues of jurisdiction under CAFA).

Accordingly, this matter is referred to Magistrate Judge Jonathan E. Hawley to establish a plan for limited jurisdictional discovery.

### ii. Timeliness of FDCPA Claim

Plaintiffs also argue that the Court erred in dismissing their FDCPA claim as untimely. Mem. Supp. Mot. Reconsider 4–7. Plaintiffs argue the Court did not address their argument that each statement Defendant sent to Plaintiff following the loan modification agreement, which accurately stated the amount owing under the agreement and recounted Plaintiffs' payments pursuant to the agreement, violated the FDCPA, and that each time Defendant transmitted information about the loan modification agreement to credit reporting agencies, it violated the FDCPA. To the contrary, the Court did address, and reject, this theory of FDCPA liability.

As Plaintiffs conceded, because Defendant's false statements to Plaintiffs on the outstanding balance of the loan occurred more than one year before Plaintiffs filed this lawsuit, these statements could not provide the basis for FDCPA liability. *See* Order 11–12. Thus, the Court concluded, "[Plaintiff's] claims . . . can rest only on the theory that a new FDCPA violation was committed each time [Defendant] mailed statements describing ongoing payments [Plaintiffs] were making on a loan alleged to have been fraudulently induced, and each time it transmitted credit information reflecting the loan's existence." *Id.* at 12. The Court held that these communications did not independently violate the FDCPA. *Id.* at 13; *see id.* at 13–15 (distinguishing Plaintiffs' authorities because Defendant's communications were accurate descriptions of a debt Plaintiffs had contracted for with Defendant, not false representations of the character, amount, or legal status of a debt). The Court held that the loan modification agreement, though allegedly induced via fraud, "cabin[ed] potential violations of the FDCPA to debt communications that preceded it." *Id.* at 13.

Plaintiffs' authorities in their supporting memorandum and supplemental notice of authority, ECF No. 32, are neither controlling nor particularly apposite. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693–94 (8th Cir. 2017) (holding that an FDCPA violation that simply restates earlier assertions restarts the statute of limitations period); *Nance v. Ulferts*, 282 F. Supp. 2d 912, 917–18 (N.D. Ind. 2003) (rejecting the defendants' argument that they did not violate the FDCPA in their attempts to collect on a loan agreement, even though the collection was permitted under the terms of the agreement, where the terms of the loan violated state law); *Harry v. Am. Brokers Conduit*, No. 16-10895-FDS, 2017 WL 129997, at *8–9 (D. Mass. Jan. 12, 2017) (denying a motion to dismiss the plaintiffs' FDCPA claim where, within a year of the lawsuit, the defendant allegedly sent a notice of default stating a past due amount that the plaintiffs disputed, a letter of intent to foreclose, and a letter threatening litigation and foreclosure); *Grace v. LVNV Funding, Inc.*, 22 F. Supp. 3d 700, 708 (W.D. Ken. 2014) (holding that if the plaintiff, in a case involving a creditor's attempt to collect interest to which it was not entitled, could show that the defendant reported to credit reporting agencies that she owed interest to which they were not entitled within one year of the filing of her complaint, her claim was timely). Here, Defendant's communications accurately depicted the money it was entitled to under the terms of the loan modification agreement. Plaintiffs challenge how Defendant procured the agreement, but this alleged misconduct does not encompass Defendant's attempts to collect on the loan as modified. *See* Order 13.

Plaintiffs have neither identified a manifest error of law or fact nor presented newly discovered evidence that would persuade this Court to reconsider its ruling that Plaintiffs' FDCPA claim is untimely, *see Caisse Nationale de Credit Agricole*, 90 F.3d at 1269, and therefore the motion to reconsider is denied insofar as it relates to this claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to reopen the case and reconsider, ECF No. 26, is GRANTED IN PART and DENIED IN PART.  Plaintiffs' motion for leave to file a reply in support of their motion to reconsider, ECF No. 31, is GRANTED.  The Clerk is directed to reopen the case.  This matter is referred to Magistrate Judge Hawley to establish a plan for limited jurisdictional discovery.

Entered this 16th day of February, 2018.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE