**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| **ROBERT L. TAYLOR AND ROBIN A. TAYLOR,** | |
| **Plaintiffs,** | **Case No. 4:16-cv-04167-SLD-JEH** |
| **v.** | |
| **OCWEN LOAN SERVICING, LLC,** | |
| **Defendant.** | |

**DEFENDANT OCWEN LOAN SERVICING, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), by counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), submits this memorandum in support of its motion to dismiss the Third Amended Class Action Complaint ("TAC") filed by Robert L. Taylor and Robin A. Taylor ("Plaintiffs").

## I.    INTRODUCTION

Plaintiffs' TAC asserts the same state law claims (the "State Law Claims") asserted in their prior complaints:  violation of the Illinois Consumer Fraud Act, 810 Ill. Comp. State. § 505/1 *et seq.* (the "ICFA") (Count Three), fraudulent inducement (Count Four), and unjust enrichment (Count Five).[1]  Ocwen previously moved to dismiss the State Law Claims, but the Court did not

---

[1] This Court previously dismissed Plaintiffs' First Cause of Action against Ocwen for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), and Plaintiffs' Second Cause of Action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*  (ECF No. 24).  Plaintiffs acknowledge in the TAC that they are "re-alleging their federal claims solely to preserve any appeal from the Court's Order dated August 10, 2017 (ECF No. 24) dismissing Plaintiffs' federal claims."  (ECF No. 54 at n.1).

rule on Ocwen's motion because Plaintiffs had not adequately alleged the Court's jurisdiction over the claims under the Class Action Fairness Act ("CAFA"). Plaintiffs subsequently amended their initial complaint to include additional jurisdictional allegations based on CAFA. The Court entered a text order on December 21, 2018 directing Plaintiffs to amend their complaint to adequately allege the citizenship of the parties. Plaintiffs filed the TAC on January 4, 2019 with additional allegations regarding the parties' citizenship. The TAC adequately alleges CAFA jurisdiction over the claims and the citizenship of the parties, and thus Ocwen's motion to dismiss is ripe for adjudication.

Plaintiffs' State Law Claims should be dismissed with prejudice because they are preempted by the Bankruptcy Code. Each claim seeks to recover for Ocwen's alleged attempt to collect discharged debts, and therefore, each claim is a variation on a claim for a violation of the discharge injunction, 11 U.S.C. § 524(a)(2). Because the State Law Claims are predicated on a violation of the Bankruptcy Code, the claims are preempted and must be dismissed. *See, e.g.*, *Hahn v. Anselmo Lindberg Oliver LLC*, 2017 U.S. Dist. LEXIS 48810, *12-13 (N.D. Ill. Mar. 31, 2017) ("'a state law claim, including an ICFA claim, is preempted by the Bankruptcy Code when the claim would not exist but for some violation of the Code[,] . . . particularly . . . when the Bankruptcy Code itself provides a remedy for such a violation.'") (quoting *Bednar v. Pierce & Assocs., P.C.*, 220 F. Supp. 3d 860, 863 (N.D. Ill. 2016)).

Plaintiffs' fraudulent inducement claim fails for other reasons too. Plaintiffs assert that claim on behalf of a nationwide class. However, under *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1781 (2017), the Court lacks jurisdiction over the fraudulent inducement claims of the non-Illinois-resident putative plaintiffs. Plaintiffs have not alleged (nor can they allege) that any of Ocwen's alleged conduct vis-a-vis those nonresident plaintiffs has any

connection to Illinois. Moreover, Plaintiffs fail to adequately allege that Ocwen intended to induce Plaintiffs to enter into a loan modification agreement. Nor can Plaintiffs allege reasonable reliance because they were afforded the opportunity of knowing the truth of the representations before they executed the modification agreement.

For these reasons, the TAC should be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

According to Plaintiffs' TAC, "Plaintiffs entered into a mortgage agreement" in December 2000, and "fell behind on their mortgage payments" in January 2007. (TAC ¶¶ 58-59). "On January 19, 2009," after "foreclosure proceedings were initiated," Plaintiffs "filed for Chapter 13 bankruptcy," while their mortgage was serviced by Saxon Mortgage Services." (*Id.* ¶¶ 55-56). Plaintiffs allege that they "successfully made their Chapter 13 payments to cure their arrears," and "on March 14, 2012," during the pendency of the bankruptcy proceeding, Saxon transferred its servicing rights to Ocwen. (*Id.* ¶¶ 59-60).

"Plaintiffs were granted a discharge on March 25, 2014," and the bankruptcy court entered an Order on Final Cure on June 4, 2014, deeming Plaintiffs' mortgage "current as [of] June 3, 2014." (*Id.* ¶¶ 62-63). In "July 2014, Plaintiffs asked Ocwen to inform them of their current mortgage payment and balance on the loan." (*Id.* ¶ 65). Ocwen sent Plaintiffs a "Reinstatement Quote" via U.S. Mail on July 8, 2014, which stated that "Plaintiffs needed to pay $50,885.18 to reinstate their loan, including $27,449.08 in interest, $765.39 in Late Charge Due, and $2,248.48 in Fee/Cost Adjustment.'" (*Id.* ¶ 66). Ocwen sent Plaintiffs a "Payoff Quote" via U.S. Mail two days later on July 10, 2014, which stated that "Plaintiffs owed $84,447.58 on their mortgage,

---

[2] The factual recitations contained herein are taken from the Amended Complaint. Ocwen does not concede that such recitations are accurate but assumes them to be true solely for the purposes of the instant motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

including $52,729.05 in principal, $28,391.00 in interest…, $2,248.85 for 'Fee/Cost Adjustment,' $422.28 in 'Escrow Advance,' and $738.35 in 'Late Charges.'" (*Id.* ¶ 67). Ocwen sent Plaintiffs a second "Payoff Quote" via U.S. Mail one week later, on July 17, 2014, which stated that "Plaintiffs owed $84,860.29 on their mortgage, including $28,391.00 in interest…, $2,248.84 for 'Fee/Cost Adjustment,' $835.19 in 'Escrow Advance,' and $738.35 in 'Late Charges.'" (*Id.* ¶ 69).

Plaintiffs allege that the Reinstatement Quote and Payoff Quotes were "materially false statement[s] and an attempt to obtain monies from Plaintiffs that they did not owe as a result of the Notice of Final Cure Payment and Order on Final Cure" and that, "at the completion of their bankruptcy, Plaintiffs owed $52,729.05 on their loan." (*Id.* ¶¶ 63-64, 66-69). Nonetheless, "Plaintiffs entered into a loan modification agreement in September 2014 that increased the principal balance on Plaintiffs' loan to $82,112.07." (*Id.* ¶ 71).[3] Plaintiffs allege that, "by increasing the principal balance of the loan, Ocwen unjustly increased its compensation in servicing the loan." (*Id.*). Plaintiffs allege that they "have made mortgage payments based on the fraudulently inflated balance," and that Ocwen has "been misrepresenting the status of Plaintiffs' loan on Plaintiffs' credit reports." (*Id.* ¶¶ 72-73). Plaintiffs alleged that Ocwen's conduct violated the ICFA and constituted fraudulent inducement and unjust enrichment under Illinois law, in addition to alleged violations of federal law.

The Court entered a text order on December 21, 2018, directing Plaintiffs to amend their complaint for a third time to adequately allege the citizenship of the Plaintiffs and Ocwen. Plaintiffs filed their TAC on January 4, 2019, adding new allegations regarding the citizenship of the parties, but once again making no substantive changes to the factual allegations or the claims of the prior complaints. (ECF No. 54).

---

[3] A copy of the Loan Modification Agreement is attached hereto as **Exhibit A**.

### III.  LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Put another way, a complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Id.*  In evaluating a motion to dismiss, the Court must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth."  *McCauley v. Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Dismissal of a plaintiff's complaint is appropriate under Rule 12(b)(2) if the court lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of establishing that the Court has jurisdiction over the defendants.  *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

### IV.  ARGUMENT

**A.  Plaintiffs' State Law Claims fail as a matter of law because they are preempted by the Bankruptcy Code.**

Plaintiffs' State Law Claims are premised entirely on alleged violations of the Bankruptcy Code, which provides Plaintiffs with comprehensive remedies for such violations.  As a result, Plaintiffs' State Law Claims are preempted by the Bankruptcy Code and must be dismissed.

1.      <u>Claims that are based on violations of the Bankruptcy Code are preempted.</u>

"Complete preemption confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 722 (7th Cir. 2010). "The vast majority of courts that have addressed the issue of the Bankruptcy Code's effect on a plaintiff's state law claims [including federal courts in Illinois] have held that the Bankruptcy Code preempts state law claims that are based upon allegations that the defendant violated the Bankruptcy Code." *Abramson v. Federman & Phelan, LLP*, 313 B.R. 195, 197 (Bankr. W.D. Pa. 2004) (citing cases). These holdings are based on "[t]he expansive reach of the Code," *Knox v. Sunstar Acceptance Corp.*, 237 B.R. 687, 701-02 (Bankr. N.D. Ill. 1999), which is "designed to adjudicate and conciliate all competing claims to a debtor's property in one forum." *Abramson*, 313 B.R. at 197 (citing *Holloway v. Household Automotive Finance Corp.*, 227 BR 501, 507-08 (N.D. Ill. 1998)). Any state law claim that "arises under" or relates to a case under Title 11 is preempted. *Alabi v. Homecomings Fin. LLC*, 2011 U.S. Dist. LEXIS 107632, at *21 (N.D. Ill. Sept. 21, 2011) (citing *In re Lenoir*, 231 B.R. 662, 675 (Bankr. N.D. Ill. 1999); *Cox v. Zale Delaware, Inc.*, 1998 U.S. Dist. LEXIS 10707, at *5 (N.D. Ill. 1998)).

The United States District Court for the Northern District of Illinois aptly quoted the following explanation by the Ninth Circuit Court of Appeals:

> A mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control, which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal.

*Knox*, 237 B.R. at 701-702 (citation omitted).

In *Knox*, the plaintiff alleged ICFA violations and unjust enrichment, alleging that the defendant creditor had filed proofs of claim intentionally misrepresenting the collateral's value. *Id.* at 692. The court dismissed plaintiff's state claims, holding that they were preempted by the Bankruptcy Code. *Id*. at 702 (observing that plaintiff's claims were "intricately related and wholly dependent on asserted violations of the Bankruptcy Code"). The court explained: "Without the Bankruptcy Code's requirement that [the defendant] submit proofs of claim, and the Code's instruction concerning the appropriate method by which to value secured claims under § 506, [the plaintiff] would have no factual basis on which to bring an action for deceptive conduct under the Illinois consumer fraud statute." *Id*. Moreover, the court observed, "[b]oth the unjust enrichment claim and the claim under the [ICFA] seek remedies for violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies." *Id*.; *accord Cox*, 242 B.R. at 449-50 (finding state law consumer fraud claims preempted by the Bankruptcy Code, noting that the "expansive reach [of the Bankruptcy Code] ... preempts virtually all claims relating to alleged misconduct in the bankruptcy courts"); *Lenoir*, 231 B.R. at 675 (dismissing claims for consumer fraud and unjust enrichment as preempted by the Bankruptcy Code); *Carter v. HSBC Mortg. Servs.*, 2016 U.S. Dist. LEXIS 128682, *18-19 (S.D. Ind. Sept. 21, 2016) (holding plaintiff's actual fraud, constructive fraud, unjust enrichment and restitution claims all preempted by the Bankruptcy Code).

>    2.    Plaintiffs' State Law Claims are premised on Bankruptcy Code violations and thus are preempted.

As in *Knox*, Plaintiffs' state law claims are "wholly dependent on asserted violations of the Bankruptcy Code." *Knox*, 237 B.R. at 702. Plaintiffs base their state law claims *exclusively* on allegations that Ocwen attempted to collect discharged debts "contrary to orders of the bankruptcy court, contrary to the purposes of Chapter 13 bankruptcy proceedings, … designed to deceive

successful Chapter 13 debtors into paying more than what is owed," and "is in flagrant disregard of [bankruptcy] court orders and the bankruptcy process." (TAC ¶¶ 125, 133, 139). In other words, Plaintiffs' "state law claims presuppose a violation of the Bankruptcy Code," *Kerney v. Capital One Fin. Corp.*, 278 B.R. 457, 480 (Bankr. E.D. Tenn. 2002), and would not exist absent such alleged Bankruptcy Code violations. Without the Order on Final Cure and the discharge order, Plaintiffs could not assert their State Law Claims. "Essentially, the purported state cause[s] of action rel[y] 'on the Bankruptcy Code in order to obtain a state law remedy,' and [are] 'intimately tied to the existence of [Plaintiffs'] bankruptcy." *Holloway*, 227 B.R. at 508; *see also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2011) (reasoning "that Congress did not intend for enforcement of a discharge order to be left to any other judge than the bankruptcy judge who issued the order").

Recent decisions from the Northern District of Illinois further confirm that Plaintiffs' ICFA claim is preempted. In *Hahn v. Anselmo Lindberg Oliver LLC*, 2017 U.S. Dist. LEXIS 48810 (N.D. Ill. Mar. 31, 2017), the court held that an ICFA claim based on an attempt to foreclose on a property in violation of an automatic stay is preempted by the Bankruptcy Code. *Hahn* relied on *Bednar v. Pierce & Assocs., P.C.*, 220 F. Supp. 3d 860 (N.D. Ill. 2016), which held that "'a state law claim, including an ICFA claim, is preempted by the Bankruptcy Code when the claim would not exist but for some violation of the Code[,] . . . particularly . . . when the Bankruptcy Code itself provides a remedy for such a violation.'" *Hahn*, 2017 U.S. Dist. LEXIS 48810, at *12-13 (quoting *Bednar*, 220 F. Supp. 3d at 863). The rationale in *Hahn* and *Bednar* is equally applicable here. Plaintiffs' ICFA claim is based on Ocwen's alleged violation of the discharge injunction, 11 U.S.C. § 524(a)(2). The discharge injunction "simply makes permanent what had previously been temporary" under the automatic stay. *In re Perviz*, 302 B.R. 357, 369 (Bankr. N.D. Ohio 2003).

Like with a violation of an automatic stay, the Bankruptcy Code provides an adequate remedy for a violation of the discharge injunction, as the bankruptcy court that issued the injunction "can impose sanctions under Bankruptcy Code § 105." *Montano v. First Fed. Credit Union (In re Montano)*, 2007 Bankr. LEXIS 3125, *5 (Bankr. D.N.M. 2007).

In response to Ocwen's prior motions to dismiss, Plaintiffs have argued that bankruptcy preemption only applies when the state law claims relate to a defendant's conduct occurring prior to or during the bankruptcy. Plaintiffs admit, however, that bankruptcy preemption can apply to claims related to a defendant's conduct occurring post-discharge, but only when the claim specifically asserts a violation of the discharge injunction as opposed to a violation of some other bankruptcy court order. Plaintiffs assert that preemption does not apply here, because they allege that Ocwen has violated the Order on Final Cure, not the discharge injunction. Plaintiffs' argument misstates the law and the scope of their own claims.

First, as noted more fully above, the preemption doctrine applies to any claims that "presuppose a violation of the Bankruptcy Code," *Kerney*, 278 B.R. at 480, regardless of when the allegedly violative conduct occurs. Moreover, it is wholly irrelevant whether the claims relate to a violation of the discharge injunction or of some other bankruptcy court order, as long as the claim "arises under" the Bankruptcy Code.

Second, Plaintiffs' argument is premised on an overly narrow reading of their State Law Claims, which are, notwithstanding Plaintiffs' contentions to the contrary, based on alleged violations of the discharge injunction. The Order on Final Cure outlines the amount of the mortgage debt that is no longer collectible because it has been paid through the Chapter 13 plan. *See* Fed. R. Bankr. P. 3002.1(f)-(h). The Order on Final Cure effectively provides an accounting of certain amounts that are not collectible post-discharge. The discharge order, however, is what

prohibits creditors such as Ocwen from collecting debts that have been paid through the plan after the bankruptcy. *See* 11 U.S.C. §§ 524, 1328. Plaintiffs' attempt to characterize their State Law Claims as only relating to violations of the Order on Final Cure, and not the discharge injunction, is disingenuous at best.

Accordingly, because permitting Plaintiffs' "state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Montano*, 2007 Bankr. LEXIS 3125, *5, Plaintiffs' State Law Claims must be dismissed.

**B.  Plaintiffs' Fraudulent Inducement claim must be dismissed based on a lack of personal jurisdiction.**

Personal jurisdiction is the authority of a court to issue a judgment against a party in a particular case. *See Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). The Fourteenth Amendment's due process guarantee requires that before a court can exercise personal jurisdiction over a defendant, the defendant must have certain minimum contacts with the forum state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiffs seek to assert a fraudulent inducement claim on behalf of a nationwide class. The Court, however, lacks personal jurisdiction over the claims of the non-Illinois-resident putative plaintiffs, which requires dismissal of the fraudulent inducement claim.

1.  <u>The Court does not have general jurisdiction over Ocwen.</u>

"A court with general jurisdiction may hear *any* claim against [a] defendant, even if all incidents underlying the claim occurred in a different State." *Bristol-Myers*, 137 S.Ct. at 1780 (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

919 (2011)).  A corporation is subject to general jurisdiction in its state of incorporation and the state of its principal place of business.  *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014).  In "exceptional case[s]," general jurisdiction may exist where a company's activities in a state are "so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761 n.19.  Merely placing a product into the stream of commerce or doing business in a state is not sufficient.  *Id.* at 757 (citations omitted).  "[T]hreshold contacts required for general jurisdiction are very substantial indeed."  4 Charles Allan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1067, at 295-98 (1987).

The exceptionally high standard for the exercise of general jurisdiction was recently reaffirmed by the Supreme Court.  In *Daimler*, the Court confirmed that merely conducting business in a forum, even very substantial and systematic business, is insufficient to support general personal jurisdiction over a corporate defendant.

The Supreme Court first made clear that a corporation is not "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business."  *Id*. at 760-61.  The Court characterized that former approach as "unacceptably grasping."  *Id*. at 761.  Rather, the Court explained that, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Id*.

The Court did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id*. at 761 n.19 (emphasis added).  But, the Court concluded that MBUSA's and Daimler AG's business activities in California – including the tens of thousands of vehicles that MBUSA sells in California, its regional headquarters, and its statewide service and sales support – was ***insufficient***

to find general jurisdiction. The Court added that even considering MBUSA's activities, Daimler AG's California contacts "plainly do not approach th[e] level" of exceptional in-forum conduct that could subject it to general personal jurisdiction. *Id*. at 716 n.19.

When weighed against this authority, there is no conceivable basis to claim that Ocwen is subject to general jurisdiction in Illinois. The TAC includes no allegations as to how Ocwen's contacts with Illinois could render it "at home" in this state. At most, Ocwen has serviced loans held by Illinois borrowers, but the Supreme Court's jurisprudence is clear that mere economic activity in a forum is insufficient to confer general jurisdiction. *Id.* at 757. Ocwen is not incorporated in or headquartered in Illinois; rather, Ocwen is incorporated in Delaware and has its principal place of business in Florida. Ocwen has no offices or employees located in Illinois. Ocwen conducts business nationwide and does not focus its business activities in Illinois. Ocwen's activities in Illinois are no greater than the *Daimler* defendants' activities in California. Hence, this is not one of those "exceptional case[s]" in which Ocwen's activities in Illinois are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761 n.19. For these reasons, Ocwen is not subject to general jurisdiction in Illinois.

2.    The Court does not have specific jurisdiction over the fraudulent <u>inducement claims of nonresident putative plaintiffs.</u>

Because Ocwen is not subject to general jurisdiction in Illinois, Plaintiffs must show that the Court can exercise personal jurisdiction over each of the claims against Ocwen. As explained herein, the Court lacks specific jurisdiction over the fraudulent inducement claims of non-Illinois-residents, and therefore the fraudulent inducement claim must be dismissed.

i.    *Bristol-Myers* clarifies personal jurisdiction over nonresident plaintiff's claims.

In contrast to general jurisdiction, specific or "conduct-linked" jurisdiction involves lawsuits "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For specific jurisdiction, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted). In other words, to show specific jurisdiction, Plaintiffs' claims must "aris[e] out of or [be] related to the defendant's contacts with the forum." *Daimler*, 134 S.Ct. at 751. "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction is therefore determined by the "link" between the plaintiff's claims—the defendant's alleged wrongdoing—and the forum state. *Id.* at 1781.

According to the Supreme Court, the "proper lens" to evaluate specific jurisdiction is by determining whether the defendant's allegedly wrongful actions are sufficiently connected to the forum. *See Walden*, 134 S.Ct. at 1124 (holding there was no specific jurisdiction because the defendant's allegedly wrongful actions occurred outside the forum state); *Bristol-Myers*, 137 S.Ct. at 1781 ("What is needed – and what is missing here – is a *connection between the forum and the specific claims at issue*.") (emphasis added).

In *Bristol-Myers*, the Supreme Court held that *all plaintiffs* must be able to show specific jurisdiction as to their claims, even if *some plaintiffs* can indisputably show personal jurisdiction as to their claims. Specifically, the Court held that the link between nonresident plaintiffs and the forum state was too attenuated for personal jurisdiction over the nonresident plaintiffs' pharmaceutical products liability claims, when the nonresident plaintiffs were not prescribed the

drug in the forum state, did not consume the drug in the forum state, and were not injured in the forum state (California). *Bristol-Myers*, 137 S.Ct. at 1781. The only link between the nonresident plaintiffs' claims and the forum was that the nonresidents' claims "were similar in several ways to the claims of the California residents." *Id.* at 1779. The Supreme Court soundly rejected the idea that the California court could assert personal jurisdiction in that instance. In doing so, it confirmed that the Fourteenth Amendment's due process protections prohibit a court from forcing an out-of-state defendant to litigate class claims that have no connection to the forum. In fact, the Supreme Court emphasized that the Fourteenth Amendment's "*primary concern*" in ensuring due process is mitigating "*the burden on the defendant*." *Id.* at 1780 (citations omitted) (emphasis added).

Under *Bristol-Myers*, the Court cannot exercise personal jurisdiction over Ocwen as to the nonresident Fraudulent Inducement Class members' claims. Fundamental fairness prohibits summoning a foreign defendant into a foreign court to answer for the alleged wrongdoing committed against foreign plaintiffs outside of the forum state. The fact that *resident* plaintiffs allegedly suffered from similar conduct by the defendant is immaterial:

> The mere fact that *other* plaintiffs ... sustained the same injuries as did the nonresidents ... does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents.

*Id.* (third alteration in original) (citation omitted).

### ii. *Bristol-Myers* applies in the class action context.

Although *Bristol-Myers* was in the context of a mass tort rather than a class action, its holding is nonetheless applicable to class claims. Although this Court has not addressed the issue specifically, sister courts in Illinois (and throughout the country) have consistently held that *Bristol-Myers*' holding applies to class actions. *See, e.g.*, *Mussat v. IQVIA, Inc.*, Case No. 17 C

8841, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) (holding that *Bristol-Myers* "bars nationwide class actions in for a where the defendant is not subject to general jurisdiction"); *America's Health and Resource Center, Ltd. v. Promologics, Inc.*, Case No. 16 C 9281, 2018 WL 347444 (N.D. Ill. July 19, 2018) (holding that *Bristol-Myers* applies to class actions); *DeBernardis v. NBTY, Inc.*, No. 17 C 2165, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a forum, such as this case, where there is no general jurisdiction over the Defendants."); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018) (holding that *Bristol-Myers* "prevent[ed] it from exercising personal jurisdiction over defendants with respect to the claims of non-Illinois-resident class members"); *Anderson v. Logitech, Inc.*, No. 17 C 6104, 2018 U.S. Dist. LEXIS 36785, at *3 (N.D. Ill. Mar. 7, 2018) (striking putative nationwide class claims under the reasoning in *Bristol-Myers*); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, at *9-10 (N.D. Ill. Oct. 26, 2017) (dismissing class claims by nonresidents because "a state may not assert specific jurisdiction over a nonresident's claim where the connection to the state is based on the defendant's conduct in relation to a resident plaintiff, and not the nonresident plaintiff"); *BeRousse v. Janssen Research & Development, LLC*, 2017 WL 4255075, at *4 (S.D. Ill. Sept. 26, 2017) (holding that under *Bristol-Myers*, the court lacked specific personal jurisdiction over defendants regarding the non-Illinois plaintiffs' claims); *Douthit v. Janssen Research & Development, LLC*, 2017 WL 4224031, at *5 (S.D. Ill. Sept. 22, 2017) (same); *accord Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *4 (N.D. Ill. Feb. 13, 2017) (holding prior to *Bristol-Myers* that "[b]ecause specific personal jurisdiction is based on claims arising out of a defendant's conduct within the forum state, this Court has no jurisdiction

over claims based on out-of-state consumer fraud laws" alleged by nonresident putative plaintiffs in a class action); *see also Maclin v. Reliable Reports of Tex., Inc.*, No. 1:17cv2612, 2018 U.S. Dist. LEXIS 49511, at *8 (N.D. Ohio Mar. 26, 2018) ("The Court finds that *Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs against [defendant]."); *Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class.").

*Bristol-Myers* necessarily applies in the class action context because the Court's ability to exercise personal jurisdiction over claims is constrained by Ocwen's due process rights. *Bristol-Myers* defines this constitutional due process guaranteed to Ocwen: as an out-of-state defendant, Ocwen cannot be haled into court to answer for claims made by nonresident plaintiffs when the actions giving rise to the claim bear no relation to the forum state. *Bristol-Myers*, 137 S.Ct. at 1781. Rule 23 cannot be used to deny Ocwen this right. Indeed, if the claims were *not* aggregated together in a class action, Ocwen would be able to challenge the court's personal jurisdiction over claims by nonresident plaintiffs. Rule 23 cannot operate to deprive a defendant of this right. *See, e.g.*, 28 U.S.C. § 2072 ("[The Federal Rules of Civil Procedure] shall not abridge, enlarge or modify any substantive right."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("The Rules Enabling Act underscores the need for caution.... [N]o reading of [Rule 23] can ignore the Act's mandate that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" (internal citations and quotation marks omitted)); *Amchem. Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints."); *see also In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 U.S. Dist. LEXIS 153265, at

*37 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case.").

Aggregating class claims together cannot create personal jurisdiction where there otherwise would be none—such would deny Ocwen its right to challenge the individual nonresident plaintiffs' ability to bring their claims in the forum court. *Bristol-Myers*, 137 S.Ct. at 1781; *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that [a defendant] will not be entitled to litigate its statutory defenses to individual claims.").

Finally, to the extent Plaintiffs will attempt to argue that *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), authorizes the Court to exercise personal jurisdiction over Ocwen for claims by the nonresident class members, such an argument is unavailing. *Shutts* dealt with whether a court could exercise personal jurisdiction over absent plaintiffs, not whether a court could exercise personal jurisdiction over an out-of-state class action defendant. Specifically, the defendant in *Shutts* argued that the court could not exercise personal jurisdiction over out-of-state *plaintiffs* unless they affirmatively opted-in to a class action. *Id.* at 806. The Supreme Court rejected that contention, finding that Kansas law afforded sufficient protections for out-of-state plaintiffs to satisfy the Constitution's Due Process Clause, even if they had minimal contact with the forum. *Id.* at 814. According to the Supreme Court, the plaintiffs' ability to opt-out, coupled with the fact that the absent plaintiffs received "adequate representation," allowed for personal jurisdiction over them. *Id.* The Supreme Court acknowledged the "sharp contrast" between the showing needed to exercise personal jurisdiction over a plaintiff and the showing needed to exercise personal

jurisdiction over a class action defendant, stating that "[t]he burdens placed by a State upon a class-action plaintiff are not of the same order or magnitude as those it placed upon an absent defendant." *Id.* at 808-09. The Court recognized the enormous burdens a defendant faces when having to litigate claims in a foreign forum, including the risk of a foreign court entering judgment against them, the need to hire counsel and travel to the forum, enduring expensive discovery and facing substantial damages, which burdens "are not of the same order or magnitude" as those placed upon absent plaintiffs. *Id.* at 808. An absent plaintiff faces far less risk in being haled into a faraway court; as a result, "the Due Process Clause need not and does not afford the former [absent plaintiffs] as much protection from state-court jurisdiction as it does the latter [defendants.]" *Id.* at 811. *Shutts* therefore does not hold that the Court need not have personal jurisdiction over a defendant in a purported class action as to the claims of absent class members.

Moreover, *Bristol-Myers* explicitly distinguished *Shutts* from cases regarding personal jurisdiction over out-of-state defendants on this very ground, and flatly rejected the non-resident plaintiffs' argument that *Shutts* could be extended to allow the court to exercise personal jurisdiction over out-of-state defendants. *Bristol-Myers*, 137 S.Ct. at 1782-83. The Supreme Court held that "[s]ince *Shutts* concerned the due process rights of *plaintiffs*, it has no bearing on the question presented [in *Bristol-Myers*]." *Id.* at 1783 (emphasis in original). Accordingly, *Shutts* is inapposite.

Plaintiffs' putative Fraudulent Inducement Class claims on behalf of the nonresidents plaintiffs should therefore be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Plaintiffs' Second Amended Complaint does not include any allegations as to how the nonresidents' claims are connected to Illinois. To the contrary, the entire basis for personal jurisdiction over these nonresidents' claims is that their claims are similar to Plaintiff's claims.

But the Supreme Court already rejected this approach in *Bristol-Myers*: "[t]he mere fact that other plaintiffs … sustained the same injuries as did the nonresidents … does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781.

**C.     Plaintiffs fail to adequately allege their fraudulent inducement claim.**

If the Court finds that Plaintiffs' fraudulent inducement claim is not preempted by the Bankruptcy Code or should be dismissed for lack of personal jurisdiction, it should nevertheless dismiss the fraudulent inducement claim as insufficiently pled.  To state a claim for fraudulent inducement, a plaintiff must allege that (1) the defendant made false representations of material fact; (2) the defendant knew or believed the representation was false at the time of its making; (3) the defendant made the misrepresentation for the purpose of inducing plaintiff to act; (4) the plaintiff did so act; (5) the plaintiff had a reasonable belief in and relied on the misrepresentation; and (6) the misrepresentation damaged plaintiff.  *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998).  Pursuant to Fed. R. Civ. P. 9(b), fraudulent inducement claims must be pled with sufficient particularly.  *Damian Servs. Corp. v. White*, 1998 WL 596466, *2 (N.D. Ill. Sept. 3, 1998).

Plaintiffs have not sufficiently alleged "that [Ocwen] knew or believed that any statement was false", that Ocwen made a misrepresentation for the purpose of inducing Plaintiffs to act, "or that [Plaintiffs] reasonably relied on any misrepresentation by [Ocwen]."  *Damian*, 1998 WL 596466, at *3.

Plaintiffs have only made conclusory allegations that Ocwen knew or believed that the statements regarding outstanding loan balances were false, and that Ocwen had "an intent to induce Plaintiffs and Fraudulent Inducement Class members to enter into loan modification agreements

with inflated balances." (TAC ¶¶ 68, 130). However, Plaintiffs plead no facts that would substantiate their assertions regarding Ocwen's knowledge and intent.

Moreover, Plaintiffs have not even attempted to allege that their reliance was reasonable nor can they. Illinois courts have long recognized that "a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth … he cannot be heard to say he was deceived by misrepresentations." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 882 (7th Cir. 2005) (quoting *Schmidt v. Landfield*, 20 Ill.2d 89, 169 N.E.2d 229, 232 (Ill. 1960)); *see also Miller v. William Chevrolet/GEO, Inc.*, 326 Ill.App.3d 642, 260 Ill.Dec. 735, 762 N.E.2d 1, 9 (Ill. App. Ct. 2001) *see also Damian*, 1998 WL 596466, at *4 (dismissing fraudulent inducement claim for, *inter alia*, failing to sufficiently plead reasonably reliance with the particularity required by Rule 9(b)). Plaintiffs allege that Ocwen knew the statements in the Payout Quotes were incorrect because Ocwen had been served with the Notice of Final Cure Payment. Plaintiffs, however, had knowledge of that same notice, which means that they either knew that the statements were incorrect or, at the very least, could have known they were incorrect. Thus, any reliance by Plaintiffs on the allegedly false reinstatement quotes sent by Ocwen—which purportedly included amounts that Plaintiffs did not owe as a result of the Order on Final Cure—was unreasonable as a matter of law.

Plaintiffs' fraudulent inducement claim therefore fails to state a claim and the Fourth Cause of Action should be dismissed.

## V.     CONCLUSION

WHEREFORE, Defendant Ocwen Loan Servicing, LLC, respectfully requests that this Court: (1) grant its Motion to Dismiss; (2) enter an Order dismissing with prejudice Plaintiffs' Third Amended Class Action Complaint; and (3) grant Ocwen any other such relief as may be appropriate.

Dated:  January 18, 2019

Respectfully submitted,

/s/ Michael E. Lacy
Michael E. Lacy
TROUTMAN SANDERS LLP
Post Office Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Fax: (804) 698-1339
Email: michael.lacy@troutman.com

Seth M. Erickson (No. 6299731)
TROUTMAN SANDERS LLP
One North Wacker Drive, Suite 2905
Chicago, IL 60606
Telephone: (312) 759-1920
Fax: (773) 759-1939
Email: seth.erickson@troutman.com
**Counsel for Defendant Ocwen Loan Servicing, LLC**

## LOCAL RULE 7.1(B)(4) CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court complies with Local Rule 7.1(B)(4) as it does not contain more than 7,000 words. The foregoing pleading contains 6,488 words.


Dated:  January 18, 2019.

/s/ Michael E. Lacy
Michael E. Lacy

37564075